UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                      Case Number 17-20485

v.                                                 Honorable David M. Lawson

DUANTE HARRIS,

        Defendant.
_____/

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Duante Harris has filed a motion asking the Court to reduce his prison sentence to time served under the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. Because he has not shown that "extraordinary and compelling reasons warrant such a reduction," as section 3582(c)(1)(A)(i) requires, his motion will be denied.

I.

On September 26, 2017, Harris pleaded guilty to carjacking and brandishing a firearm during a crime of violence. He was sentenced to 30 days in prison for carjacking and a consecutive (mandatory) 84-month term for brandishing the firearm. Harris has served less than half of his sentence and, according to public records, his projected release date is January 23, 2024.

Harris, who is 27 years old, asserts that he is qualified for a sentence reduction to time served because he has exhausted his administrative remedies and his physical conditions, coupled with the novel coronavirus pandemic and its spread through prisons, present extraordinary circumstances warranting release. Harris suffers from asthma, which presents a potential risk for complications with COVID-19 as outlined by the Centers for Disease Control and Prevention (CDC). He also argues that his race (he is African-American) puts him at a higher risk for

complications from the disease and that the living conditions in the prison make it difficult to isolate himself from other inmates.

The Government is satisfied that Harris has exhausted his administrative remedies. But it argues there is no evidence that his condition of asthma is severe enough to warrant release. It points to recent information from the CDC suggesting that only "moderate to severe" asthma may pose potential complications with COVID-19, and Harris' asthma does not meet that definition.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Harris relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, *first*, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," *second*, if "extraordinary and

compelling reasons warrant such a reduction," and *third*, if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (en banc) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it").

Harris's showing on the second element — extraordinary and compelling reasons — is insufficient, so it is unnecessary to discuss the other two. To establish extraordinary and compelling reasons for the relief he requests, Harris points to the conditions of his physical health, arguing that he is vulnerable to complications if he were to contract COVID-19. And he is understandably concerned about being infected with the coronavirus. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. Because there is no current vaccine, the CDC recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States of America v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who

contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ortiz*, 2020 WL 3640582, at *2 (collecting cases; footnotes omitted).

Harris has identified two vulnerability factors: asthma and race. The CDC has outlined the following medical conditions which place an individual at a higher risk of complications should they contract COVID-19. They consist of people 65 years and older; people who live in a nursing home or long-term care facility; and people of all ages with underlying medical conditions, particularly if not well controlled, including: (1) people with chronic lung disease or moderate to severe asthma, (2) people who have serious heart conditions, (3) people who are immunocompromised, (4) people with severe obesity; (5) people with diabetes, (6) people with chronic kidney disease undergoing dialysis, and (7) people with liver disease. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. The CDC has also noted that "current data suggest a disproportionate burden of illness and death among racial and ethnic minority groups." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnic-inorities.html. And in Michigan, "African Americans account for 33% of COVID-19 cases and 40% of the deaths, according to state data, though they make up 14% of the state's population." https://news.umich.edu/african-americans-and-covid-19-in-michigan-u-m-experts-available/.

But here, the relevant factors do not combine to meet the "extraordinary and compelling" threshold. Harris's medical condition of asthma does not satisfy the requirements for release in USSG § 1B1.13 cmt. n.1, even when considered in combination with the COVID-19 pandemic.

According to readily available online sources, "[a]sthma is classified into four categories based on how often you have symptoms and how well you breathe. These categories are mild intermittent; mild persistent; moderate persistent; and severe persistent." Adult Onset Asthma WebMD Medical Reference, https://www.webmd.com/asthma/qa/what-are-the-categories-of-asthma (last visited August 4, 2020). "Moderate persistent asthma" is characterized by the following symptoms: "You have symptoms daily. You have nighttime symptoms more than five times per month. Your symptoms affect your activity, happen more than two times per week, and may last for days. Lung function tests are 60% to 80% of predicted values based on your age, sex, and height." *Ibid.* "Severe persistent asthma" is defined as follows: "You have symptoms continuously, with frequent nighttime asthma. Your activities are limited. Lung function is less than 60% of predicted values based on your age, sex, and height." *Ibid.*

None of Harris's submitted medical records reflect any diagnosis of significantly reduced lung function. The records make little mention of his asthma other than to note he has a history of asthma and is prescribed an inhaler. Both the 2019 and 2020 records indicate his asthma is in "remission."

Harris alleges that, prior to his arrest, he had a severe asthma attack for which he needed to be hospitalized. However, there are no hospital records on file here reflecting that incident. The records that have been submitted show no reports of any recent asthma attacks or inability to breathe properly while in prison. Nothing in the available records sufficiently substantiates a conclusion that Harris's condition presently is serious enough to place him in any category of elevated vulnerability to the coronavirus disease complications. *See United States v. Trent,* No. 17-20839, 2020 WL 4001913, at *4 (E.D. Mich. July 15, 2020) (holding that 27-year-old defendant with moderate asthma did not warrant compassionate release).

Moreover, current CDC guidelines indicate that among people with asthma, only those "with moderate to severe asthma may be at a higher risk" of severe illness from COVID-19. CDC, People with Moderate to Severe Asthma. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (last visited August 14, 2020). There are also recent reports that asthma may not impact a person's susceptibility to COVID-19 as was initially believed. *See* Danny Harkin, Asthma is Absent Among Top Covid-19 Risk Factors, Early Data Shows, The New York Times (Apr. 20, 2020), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (last visited August 4, 2020).

Harris's argument that he is at a higher risk of serious illness because of his race does not amount to an extraordinary and compelling reason warranting his release. Unfortunately, it is true that the rates of death and hospitalization from COVID-19 among African Americans is much higher than that among the general population. *See, e.g.*, Tiffany Ford, Sarah Reber, and Richard V. Reeves, Race Gaps in COVID-19 Deaths Are Even Bigger Than They Appear, Brookings, June 16, 2020, https://www.brookings.edu/blog/up-front/2020/06/16/race-gaps-in-covid-19-deaths-are-even-bigger-than-they-appear (last visited August 3, 2020). However, so far as is currently understood, that difference most probably owes to "[l]ong-standing systemic health and social inequities." Ctrs. for Disease Control and Prevention, COVID-19 in Racial and Ethnic Minority Grps., https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnic-minorities.html (last visited August 3, 2020).

As other courts have recognized, the fact of an inmate's race itself does not constitute a risk factor for COVID-19 in the same way, as, for instance, an underlying medical condition does. *See, e.g.*, *United States v. White*, 2020 WL 2733891, at *5 (E.D. Mich. May 26, 2020); *Carlos*

*M.D. v. Anderson*, 2020 WL 2487646, at *8 (D.N.J. May 14, 2020); *United States v. Leigh-James*, No. 3:15-CR-188 (SRU), 2020 WL 4003566, at *8 (D. Conn. July 15, 2020).

Harris argues his risk of contracting COVID-19 is increased because of his living conditions in prison because it is difficult to isolate from others. It is certainly true that prisons increase the likelihood for breakouts. The "low capacity for patient volume, insufficient quarantine space, insufficient on-site medical staff, highly congregational environments, inability of most patients to leave the facility, and limited ability of incarcerated/detained persons to exercise effective disease prevention measures" all contribute to the increased risk. *United States v. Kennedy*, No. 18-20315, 2020 WL 1493481, at *2 (E.D. Mich. Mar. 27, 2020).

However, the possibility that COVID-19 may spread to a particular prison alone cannot independently justify compassionate release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). A "generalized risk of contracting COVID-19 and potentially developing the more severe symptoms is not akin to the type of 'extraordinary and compelling reasons' justifying compassionate release identified by the Sentencing Commission." *United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *2 (E.D. Mich. May 7, 2020).

Harris's medical condition does not make him more susceptible to contracting the virus. Infection comes from environmental factors. The Bureau of Prisons (BOP) initially designated Harris to serve his sentence at FTC Oklahoma City, and recently moved him to USO Big Sandy in Kentucky, where he in confined at present. Big Sandy is a high security prison with an adjacent minimum-security satellite camp that houses roughly 1,303 inmates. The defendant reports that as of August 10, 2020, one inmate and 12 staff members tested positive for COVID-19 at USP Big Sandy, and one more staff member tested positive and recovered. Those statistics do not suggest an elevated risk for infection.

None of this is to minimize the seriousness of the coronavirus pandemic or the alarming rapidity of its spread within federal prisons. But the pandemic is a global phenomenon and some risk is inherent no matter where Harris resides, either at home or in prison. He asserts that his risk would be lower at home, but he has not put forth any convincing evidence to demonstrate that he is at an especially elevated risk of harm in the present situation of confinement. And Michigan has a significant number of confirmed COVID-19 cases. Harris has not demonstrated "extraordinary and compelling reasons" based on his physical health, and therefore he has not shown justification to reduce his sentence to time served.

### III.

Harris has exhausted his administrative remedies, but he has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motions for compassionate release (ECF No. 41, 51) are **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: August 18, 2020